## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| THE MEDICAL PROTECTIVE COMPANY, | : | Case No. 1:22-cv-122 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ABUBAKAR ATIQ DURRANI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING MOTION TO STAY AND STAYING CASE

This civil case is before the Court on Defendant Rita and Ricky Hounchell's

motion to stay (Doc. 16) and the parties' responsive memoranda (Docs. 19, 21); and

Plaintiff's motion for leave to file an amended complaint (Doc. 20) and the parties'

responsive memoranda (Docs. 22, 24, 26).

## I.     BACKGROUND

This is one of the many cases arising out of the conduct of Dr. Abubakar Durrani,

a former orthoperiodic surgeon who operated in the Cincinnati/Northern Kentucky area.

In 2012, allegations first surfaced that Durrani recommended and performed unnecessary

orthopedic surgeries on his patients for years to benefit financially.  Based on these

allegations and subsequent inquiry, hundreds of Durrani's former patients filed lawsuits

seeking damages for having been subjected to unnecessary surgeries.  In addition to

Durrani, many lawsuits have named other related entities as defendants, including the

Center for Advanced Spine Technologies (CAST), a corporation solely owned and run by

Durrani, the hospitals and surgical centers where surgeries were performed, and the manufacturers of the medical devices used in the surgeries.

Separate from the rising tide of civil ligation against Durrani, a criminal proceeding against Durrani commenced. However, Duranni's criminal case never made it to trial because, in late 2013, Durrani fled the United States for Pakistan, where he remains to this day.

Furthermore, separate from the blossoming of civil litigation against Durrani, and separate from Duranni's criminal case, there is another group of cases. Broadly speaking, this third group of cases concerns Durrani and CAST's medical malpractice insurer, The Medical Protective Company (Med Pro), Med Pro's actions related to the underlying lawsuits, and whether Med Pro owes coverage in successful underlying lawsuits.

The Current Action arises from this third group of cases. However, before detailing the Current Action, some background on other cases is helpful.

**A.      2014 Action**

In 2014, Med Pro initiated a declaratory judgment action, seeking a declaration from the Court that Med Pro had no duty to defend or indemnify Durrani or CAST under their insurance policies with Med Pro for the underlying civil suits related to Durrani and CAST's alleged misconduct. *Med. Protective Co. v. Ctr. For Advanced Spine Techs., Inc.*, No. 1:14-cv-5 (S.D. Ohio filed Jan. 2, 2014) (Black, J.) (the "2014 Action"). Med Pro claimed that it had no duty to defend or indemnify Durrani or CAST for any of underlying lawsuits because the insurance policies required Durrani and CAST to fully cooperate with Med Pro and to attend and assist in the preparation and trial of any

2

professional liability claim brought against them. (*Id.*, Doc. 174). And, by fleeing and being unwilling to return to the United States to assist in the trials against him, Med Pro claimed Duranni breached that provision, voiding any coverage. (*Id.*)

The Court initially and conditionally certified a class of any person or legal entity who has, had, or may have any claim, cause of action, or judgment against Durrani, CAST, or Med Pro in connection with the underlying lawsuits. (*Id.*, Doc. 217). However, on review of multiple motions for summary judgment, the Court decertified the class and dismissed the action without prejudice. (*Id.*, Doc. 266). *See also Med. Protective Co. v. Ctr. for Advanced Spine Techs., Inc.*, No. 1:14-CV-05, 2016 WL 6139115 (S.D. Ohio Oct. 21, 2016).

The Court decertified the class and dismissed the action without prejudice because, for Med Pro to void insurance coverage due to lack of cooperation, Med Pro needed to show that Durrani's failure to cooperate prejudiced the defense of claims against Durrani. *Id.* at *2-*3. The Court also determined that prejudice was a factual determination that needed to be made on a case-by-case basis, so the conditional class was decertified. *Id.* at *4-*5. Moreover, because prejudice would be a factual determination made on a case-by-case basis, the Court declined to exercise jurisdiction over the declaratory judgment action. *Id.* at *5. Finally, the Court noted that there would be a much more effective way to considering the issue of Med Pro's coverage on a case-by-case basis: raising the issue in each underlying lawsuit, where important factual distinctions of each case could be properly considered. *Id.*

B.    *Adams* Action

A little over three years after the conclusion of the 2014 Action, a group of underlying plaintiffs, represented by Deters Law, initiated a new action: *Patricia Adams, v. The Med. Protective Co., Inc.*, No. 1:20-cv-170 (S.D. Ohio filed Feb. 28, 2020) (Barrett, J.) (the "*Adams* Action").[1]   The *Adams* Plaintiffs, (which group includes Current Action Defendant Rita Hounchell, discussed *infra*), claimed that Med Pro and other defendants "refused to make any settlement offers" on their underlying claims, which resulted in over $17 million in verdicts against Durrani and CAST, and "aided, abetted, and encouraged Durrani to flee the United States so that [Med Pro] could deny insurance coverage based on Durrani's lack of cooperation in defending against Plaintiffs' claims." (*Id.*, Doc. 71 at 3).  From this alleged conduct, the *Adams* Plaintiffs brought a number of different claims, including (1) violations of the Kentucky Unfair Claim Settlement Practices Act; (2) bad faith under Ohio law; (3) intentional infliction of emotional distress; (3) engaging in a pattern of corrupt activity in violation of Ohio Revised Code §§ 2923.32 and 2307.60; (4) fraud; and (5) civil conspiracy.  (*Id.*)

---

[1] The *Adams* Action is not the only action asserted by underlying plaintiffs against Med Pro and Med Pro-related entities or individuals.  *E.g., Atwood v. The Med. Protective Co., Inc.*, 2:22-cv-127 (E.D. Ky. dismissed Dec. 21, 2022) (Bertelsman, J.) (voluntarily dismissed by plaintiffs); *Albers v. The Med. Protective Co.*, 2:19-cv-88 (E.D. Ky. dismissed Nov. 7, 2019) (Caldwell, J.) (dismissed without prejudice pursuant to plaintiffs' notice of dismissal); *Aaron v. McCartney*, No. 1:18-cv-173 (S.D. Ohio filed Mar. 9, 2018) (S.D. Ohio dismissed Aug. 23, 2018) (Black, J.) (granting plaintiff's amended motion to dismiss and dismissing with prejudice); *Atkinson v. The Med. Protective Co.*, No. 1:17-cv-844 (S.D. Ohio dismissed Aug. 23, 2018) (Black, J.) (granting plaintiff's amended motion to dismiss and dismissing with prejudice); *Aaron v. The Med. Protective Co.*, No. 1:15-cv-691 (S.D. Ohio dismissed Aug. 24, 2018) (Black, J.) (granting Plaintiff's amended motion to dismiss and dismissing with prejudice).

After amended pleadings, extensive briefing on a motion to dismiss, and oral argument, the Court dismissed all but the *Adams* Plaintiffs' fraud and civil conspiracy claims. (*See generally*, *Adams* Action, Doc. 71). The Court further limited the fraud and civil conspiracy claims, dismissing those claims, to the extent the claims were based on Durrani's flight to Pakistan, due to claim preclusion. (*Id.* at 11-13).

Since ruling on the motion to dismiss, Judge Barrett has held multiple discovery and status conferences. (*E.g., Adams* Action, 9/30/2022 Min. Entry, 10/18/2022 Min. Entry, 1/12/2023 Min. Entry, 2/8/2023 Min. Entry, 3/13/2023 Min. Entry). Additionally, Med Pro has filed a motion for judgment on the pleadings, requesting the following: (1) that claims of 10 of the *Adams* Plaintiffs be dismissed due to principles of res judicata and claim preclusion; and (2) that Med Pro be permitted to proceed with discovery related to the "privity" relationship between the remaining *Adams* Plaintiffs and the plaintiffs of previously dismissed actions.

### C. Current Action

In December of 2017, Defendants Rita and Ricky Hounchell were successful at trial in their underlying lawsuit against Durrani and CAST, winning a jury award of $2,19,321.04 in compensatory damages and $750,000 in punitive damages, plus attorney fees. (Doc. 2 at ¶ 37). Durrani was absent from the Hounchells' trial, despite Med Pro allegedly requesting his attendance and cooperation. (*Id.* at ¶ 34).

In March of 2022, Med Pro initiated the Current Action against the Hounchells, Durrani, and CAST. (Doc. 2). Med Pro seeks a judgment from the Court, declaring that: (1) Med Pro owes no coverage or payment obligations under the policies for

compensatory damages arising from the Hounchells' lawsuit because Durrani failed to cooperate and engaged in criminal or willful acts; and (2) Med Pro owes no coverage for punitive damages arising from the Hounchells' lawsuit because Durrani failed to cooperate, Durrani engaged in criminal or willful acts, the policies do not cover punitive damages, and Ohio public policy precludes coverage for punitive damages. (*Id.* at ¶ 45).

The Hounchells move to stay this case "until the issues of fraud and civil conspiracy against" Med Pro are decided in the *Adams* Action. (Doc. 16). Med Pro moves for leave to file an amended complaint to bring a recission claim and/or a claim that the insurance policies are void ab initio based on alleged material misrepresentations made by Durrani when applying for the insurance policies. (Doc. 20). Both motions are opposed, fully briefed, and ready for review. (Docs. 17, 21, 22, 24).[2]

## II.   STANDARD OF REVIEW

### A.   Motion to Stay

The decision whether to stay proceedings is entirely within a district court's discretion. *Ohio Envt'l. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cause on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"

---

[2] Without seeking leave, the Hounchells filed a "supplemental factual argument against Medical Protective opposing motion to amend." (Doc. 26). In essence, this document is a sur-reply, which is not permitted by local rules "except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Thus, the Court declines to consider it.

*Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (quoting *Landis v. N. Amer. Co.*, 299 U.S. 248, 254-55 (1936)).

Courts have weighed the following factors in conducting its balancing analysis: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Id*. "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

### B. Motion to Amend

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987). In deciding a party's motion for leave to amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments . . . ." *Coe*, 161 F.3d at 341. In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

## III. ANALYSIS

### A. The Hounchells' motion to stay is granted.

The Court first addresses the Hounchells' motion to stay this action until the *Adams* Action is resolved. (Doc. 16).

#### 1. Dispositive Effect

The Hounchells do not discuss whether the *Adams* Action is potentially dispositive of the Current Action. Med Pro argues that the *Adams* Action "is not designed to resolve, and not capable of resolving, the right to payment under the policies." (Doc. 17 at 11).

In the Current Action, Med Pro claims that it owes no coverage due to Durrani's failure to cooperate and due to the policies exclusions for criminal acts, willful torts, and punitive damages. Having considered these claims, the Court finds that while the *Adams* Action may clarify the issues in this case, discussed *infra*, it may not dispose of the case.

Accordingly, this factor weighs against a stay.

#### 2. Judicial Economy

The Hounchells argue that judicial economy is served by allowing discovery in the *Adams* Action to proceed first because Med Pro's fraud and civil conspiracy as related to Durrani's lack of cooperation will be an issue in the Current Action. (Doc. 16 at 3). Med Pro contends that "[j]udicial economy is not furthered because the *Adams* case will not resolve the right to payment under the policies," and the Hounchells' motion to stay is

part of a "broader effort at forum shopping, judge shopping, and harassment." (Doc. 17 at 10-11).

"Courts have granted motions to stay where there is an ongoing parallel proceeding that may clarify issues raised by a plaintiff's lawsuit." *Ramcharitar v. Procter & Gamble Co.*, No. 1:15-CV-457, 2016 WL 796129, at *2 (S.D. Ohio Mar. 1, 2016). Moreover, "[n]umerous courts, including courts in this district, have held that the risk of inconsistent decisions is a significant factor that warrants a stay of proceedings." *Id.* (citations omitted).

The Court finds that the *Adams* Action may help clarify or simplify (at least) three issues in the Current Action: (1) Med Pro's claim that it owes no coverage for the Hounchells' underlying lawsuit due to Durrani's lack of cooperation; (2) privity between the Hounchells and other Deters Law clients; and (3) privileged discovery.

First, Med Pro claims that it owes no coverage for the Hounchells' underlying lawsuit due to Durrani's lack of cooperation. But, for an insurer to assert a cooperation defense, "the insured's failure to perform must have been 'without collusion or fraudulent conduct with the insurer." *McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472, ¶ 97, 168 N.E.3d 1, 17 (Ohio Ct. App. 2021) (quoting *Conold v. Stern*, 138 Ohio St. 352, 361, 35 N.E.2d 133 (1941)). Med Pro's alleged fraudulent conduct is the subject matter of Ms. Hounchell's claims in the *Adams* Action. Specifically, the Court read the *Adams* Plaintiffs' fraud and civil conspiracy claims to be based on Med Pro's (and the other *Adams* Defendants') false statements that Durrani refused to participate in his defense. (*Adams* Action, Doc. 71 at 31, 33). Thus, Ms. Hounchell's success in the

9

*Adams* Action (*e.g.*, whether she proves that Med Pro made false statements regarding Durrani's lack of cooperation), may clarify the cooperation issue in the Current Action.

Second, Med Pro claims, both in the *Adams* Action and in the Current Action, that Ms. Hounchell should be precluded from arguing Med Pro's fraud or civil conspiracy based on res judicata. (*E.g.*, Doc. 17 at 10, n.11; *Adams* Action, Doc. 80). Specifically, Med Pro suggests that, if it can show privity between all Deters Law clients, those clients should be precluded from asserting fraud and civil conspiracy arguments related to Med Pro's involvement with Durrani's cooperation since those issues were brought, or could have been brought, in at least two prior actions that have already been dismissed. (*See generally, Adams* Action, Doc. 80). To make such a showing, Med Pro argues that is should be permitted to seek discovery related to privity between all Deters Law clients, including Ms. Hounchell, who have been injured by Durrani. (Doc. 25 at 2; *Adams* Action, Doc. 80 at 14-16). And, importantly, the parties have already briefed the issue of preclusion and privity-related discovery in the *Adams* Action. (*Adams* Action, Docs. 80, 82, 84). Thus, these issues may be clarified by the *Adams* Action.

Third, Med Pro acknowledges that certain discovery that is relevant in this case is already under review in the *Adams* Action. For example, Med Pro indicates that its claim file will be relevant to the Current Action, that the file has significant privileged information, and the file has already been produced to Judge Barrett for *in camera* review. (Doc. 25 at 5). Moreover, as discussed, Med Pro seeks discovery related to "[p]rivity issues among Deters Law clients," and whether Med Pro may seek privity

discovery is already before Judge Barrett in the *Adams* Action. (*Id.* at 2; *Adams* Action,

Doc. 80).[3] Thus, discovery may be clarified and simplified by the *Adams* Action.

Considering the foregoing, the similarity of issues, and the need to avoid

inconsistent decisions related to discovery, privilege, privity, and the merits of Ms.

Hounchell's fraud and civil conspiracy claims, are significant factors warranting a stay.

Moreover, the Court and the parties will avoid duplicative litigation and will preserve

resources by litigating these issues in the *Adams* Action first.

Accordingly, this factor weighs heavily in favor of a stay.

### 3. *Public Welfare*

No party discusses public welfare. When considering whether a stay promotes

public welfare, the Court finds this factor neutral. The expeditious resolution of cases

promotes public welfare, which favors against staying the case. However, the public also

has an interest in avoiding the waste of judicial resources, which favors staying the case.

Accordingly, public interest does not weigh heavily in either direction.

### 4. *Prejudice*

The Hounchells suggest that Med Pro will not be prejudiced since the issues of the

*Adams* Action relate to the Current Action. (Doc. 16 at 4). Med Pro does not outright

argue that it will be prejudiced or face hardship by staying the Current Action. However,

Med Pro suggests that the Current Action should proceed because: (1) Med Pro is

---

[3] Med Pro also advises that "Judge Barrett has been handling global [settlement] discussions, and this [Current Action] can be addressed if and when those global discussions proceed." (*Id.* at 5). Thus, if and when global settlement discussions proceed, judicial economy is also served by allowing those discussions to proceed while the Current Action is stayed.

following the Court's order from the 2014 Action by litigating insurance disputes on a case-by-case basis; and (2) "Med Pro (and all of the litigants and the Court system) need to see the coverage issues move forward once and for all." (Doc. 17 at 10, 12).

Having considered the Current Action and the *Adams* Action, the Court finds that the risk of prejudice to Med Pro is minimal and does not outweigh staying the proceedings. Given the overlap of issues and discovery efforts between the *Adams* Action and the Current Action, Med Pro will not be placed simply at the starting line once the stay in the Current Action is lifted. Indeed, the *Adams* Action will likely simplify the Current Action.

To be sure, the Court acknowledges Med Pro's argument that staying the Current Action is contrary to this Court's decision in the 2014 Action finding that the coverage issue must be decided on a case-by-case basis. (Doc. 17 at 12). But, a stay of the Current Action is not contrary to that decision. Whether Med Pro owes coverage for the Hounchells' underlying lawsuit will still be decided on an individual case basis. However, as discussed, some issues of this individual case will be simplified by resolution of Ms. Hounchell's claims in the *Adams* Action, warranting a stay.

Accordingly, the Court finds that the factors weigh in favor of a staying the Current Action until Ms. Hounchell's claims in the *Adams* Action are resolved.

**B. Med Pro's motion for leave to file an amended complaint is denied.**

The Court next addresses Med Pro's motion for leave to file an amended complaint. (Doc. 20). Med Pro requests leave add a rescission claim or a claim that the Durrani and CAST insurance policies are void ab initio. (*Id.*) In the proposed amended

12

complaint, Med Pro details four statements allegedly made by Durrani and CAST when applying for insurance that were material misrepresentations. (Doc. 20-1 at ¶¶ 48-54). Med Pro contends that these statements allow Med Pro to rescind the policy. For relief, Med Pro requests a "[d]eclaratory judgment that the Durrani Policies and CAST Policies are rendered void ab initio and that Medical Protective is entitled to rescind the Durrani Policies and CAST Policies. (*Id.* at Prayer for Relief).

Med Pro's motion will be denied. Med Pro's proposed added claim is unrelated to the to the original complaint. *Smotherman v. United States*, No. 2:19-CV-175, 2019 WL 13255680, at *3 (S.D. Ohio Feb. 25, 2019) (denying motion for leave to file amended complaint because plaintiff sought to bring claim "wholly unrelated" to original complaint") (collecting cases). The original complaint arises out of the Hounchells' underlying lawsuit and whether Med Pro owes coverage for the Hounchells' 2017 underlying lawsuit pursuant to the policies. The proposed added claim arises out of Durrani's 2008 insurance application and whether Med Pro may rescind the policies due to Durrani's alleged material misrepresentations. Thus, the claim of the original complaint and the proposed added claim arise out of completely unrelated occurrences.

Moreover, the proposed added claim could have a significantly broader impact than the original complaint. The original complaint seeks an individual case determination—whether Med Pro must cover the Hounchells' successful underlying litigation against Durrani and CAST. The proposed amended complaint seeks a much more sweeping ruling. If Med Pro receives a judgment that the Duranni and CAST policies are void ab initio and that Med Pro is entitled to rescind the policies, no court

may reach the question of whether Med Pro owes coverage to an underlying plaintiff pursuant to the policies because Med Pro may have no obligations pursuant to the policies. That makes this individual coverage determination an improper action to seek such a declaration. Indeed, there are many parties, beyond the parties in this Current Action, who will have an interest in whether Med Pro may rescind the policies.[4]

Accordingly, the Court, having considered the proposed amended complaint and with discretion, denies Med Pro leave to file an amended complaint in this action.[5]

## IV.   CONCLUSION

Based upon the foregoing, Defendants Rita and Ricky Hounchell's motion to stay (Doc. 16) is **GRANTED**. The parties **SHALL** file a notice within fourteen (14) days upon the conclusion of Rita Hounchell's claims in the *Adams* Action. Plaintiff's motion for leave to file an amended complaint (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

Date:   6/26/2023

Timothy S. Black
United States District Judge

---

[4] Of course, such a finding would likely have no impact on the *Adams* Action, which action is seeking damages arising from Med Pro and the other defendants' fraud and civil conspiracy, *i.e.*, not an insurance policy determination.

[5] This Court's decision is limited to denying leave to amend because Med Pro's new claim is unrelated to the original complaint. The Court is making no determinations regarding the sufficiency of such a claim and whether Med Pro could plead and prove such a claim.